IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**FRANCIS CHRISTINE BEARD**                                    **PLAINTIFF**

**V.**                    **No. 4:24-cv-00803-BSM-ERE**

**COMMISSIONER,**
**Social Security Administration**                                    **DEFENDANT**

## RECOMMENDED DISPOSITION

This Recommended Disposition ("RD") has been sent to United States District Judge Brian S. Miller. You may file objections if you disagree with the findings and conclusions set out in the RD. Objections should be specific, include the factual or legal basis for the objection, and must be filed within fourteen days. If no objections are filed, you risk waving the right to appeal questions of fact, and Judge Miller can adopt this RD without independently reviewing the record.

### I. Introduction

On January 24, 2022, Francis Christine Beard filed a Title XVI application for supplemental security income, alleging disability beginning on February 18, 2000. *Tr. 17*.

The Social Security Administration ("SSA") denied Ms. Beard's application at the initial and reconsideration levels of review. *Id.* After conducting a hearing, an Administrative Law Judge ("ALJ") found that Ms. Beard was not disabled. *Tr. 17-28*.

On July 24, 2024, the Appeals Council denied Ms. Beard's request for review, making the ALJ's denial of benefits the Commissioner's final decision. *Tr. 1-6*. Ms. Beard has requested judicial review.

For the reasons stated below, I recommend that the ALJ's decision be reversed and remanded for further review.

## II.     The ALJ's Decision[1]

Ms. Beard was thirty-nine years old on the application date. *Tr. 26*. The ALJ determined that Ms. Beard had not engaged in substantial gainful activity since January 24, 2022.[2] *Tr. 19*. At step two, the ALJ determined that Ms. Beard has the following severe impairments: depression, headaches, and personality disorder. *Id*. However, the ALJ concluded that Ms. Beard did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Pt 404, Subpt P, App'x 1 (Listings). *Tr. 20-21*.

---

[1] The ALJ followed the required five-step analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. § 416.920(a)-(g).

[2] For Title XVI claims, the relevant time-period begins on the application date. *Tr. 18*. Ms. Beard had received disability benefits for many years for similar medical conditions, including survivor's benefits when the father of her child died. *Tr. 48-49*. When that child reached 16 years of age, Ms. Beard's benefits ended. *Id*. At that time, she filed the instant application. *Id*. The ALJ was not aware of the prior period of disability until Ms. Beard brought it up at the end of the administrative hearing. *Id*.

The ALJ then determined that Ms. Beard had the residual functional capacity ("RFC") to perform work at the light exertional level, with the following limitations: (1) must avoid all exposure to hazards including moving machinery and unprotected heights; (2) should not operate a moving vehicle; (3) must avoid climbing ropes, scaffolds, and ladders; (4) must avoid light and noises like those produced by highway sounds; (5) must avoid close proximity to extremely bright lights; and (6) limited to simple tasks and can respond to supervision that is simple, direct, and concrete *Tr. 21*.

At step four, the ALJ found that Ms. Beard had no past relevant work. *Tr. 26*. At step five, relying upon testimony from a Vocational Expert ("VE"), the ALJ found that, considering Ms. Beard's age, education, work experience, and RFC, significant numbers of jobs existed in the national economy that she could perform, such as ticket seller, route aide, and merchandise marker. *Tr. 27-28*. Therefore, the ALJ found that Ms. Beard was not disabled during the relevant time-period (from January 24, 2022, through September 26, 2023, the date of the ALJ's decision). *Id.*

### III. DISCUSSION

#### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see*

*also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> Our review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision. Reversal is not warranted, however, merely because substantial evidence would have supported an opposite decision.

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

    **B.  Ms. Beard's Arguments for Reversal**

Ms. Beard contends that there is not substantial evidence supporting the ALJ's decision. She argues that the ALJ: (1) erred at step two of the sequential analysis; (2) failed to fully develop the record; (3) erred in his evaluation of subjective

complaints; and (4) adopted an RFC that did not incorporate all of her limitations. The Court finds support for reversal with respect to Ms. Beard's first argument, although all of her claims have merit.

The record shows that Ms. Beard's mental impairments caused serious disruption of her life. The ALJ did not sufficiently consider Ms. Beard's mental impairments at step two. Step two involves a determination of whether the claimant has an impairment or combination of impairments which is "severe" and meets the duration requirement. 20 C.F.R. § 416.920(a)(4)(ii). A "severe" impairment significantly limits a claimant's ability to perform basic work activities. 20 C.F.R. § 416.920(c).

At step two, the ALJ found that depression, headaches, and personality disorder were severe impairments. *Tr. 19*. He did not find bipolar disorder to be severe.

Ms. Beard was diagnosed with bipolar disorder by multiple providers. She testified that she has been seeing a counselor and psychiatrist every month since 2010. *Tr. 43*. At many counseling appointments, Ms. Beard exhibited typical bipolar disorder symptoms. More often than not, especially in 2022, Ms. Beard presented as disheveled, exhausted, irritable, and manic, with suicidal ideations, hallucinations,

5

racing thoughts, and pressured speech.³ *Tr. 483-536*. She was worried she would do something terrible and at times voiced homicidal ideations. *Id*. She was overwhelmed with caring for her family and experienced sleep disturbance due to night terrors. *Id*.

Ms. Beard took medications for her bipolar disorder, which caused side effects. *Id*. With the help of her doctors and counselor, Ms. Beard attempted to find the right recipe of medication, but she still relapsed into manic and psychotic episodes. Such is the nature of bipolar disorder; in spite of a person's best attempts to manage symptoms, mania and/or depression often recur, causing serious difficulty with day-to-day functioning. *Andler v. Chater*, 100 F.3d 1389, 1393 (8th Cir. 1996) (Given the unpredictable course of mental illness, "symptom-free intervals and brief remissions are generally of uncertain duration and marked by the impending possibility of relapse.")."⁴

---

³ I agree with Ms. Beard that the ALJ selectively highlighted brief periods of stability and occasional benign mental status examinations in support of his denial of benefits, while ignoring the substantial record evidence that Ms. Beard suffered from serious bipolar disorder related symptoms.

⁴ "You can never say that someone with bipolar disorder has had their last episode; relapse is part of the illness," explains Alan C. Swann, MD, professor and vice chair for research in the Department of Psychiatry and Behavioral Sciences at The University of Texas Medical School at Houston and director of research for the University of Texas Harris County Psychiatric Center. "Relapse is self-perpetuating; once it happens, the more likely it is to happen again."

https://medicine.umich.edu/dept/prechter-program/dealing-bipolar-disorder-relapse-bumpy-road (last accessed March 10, 2025).

On November 4, 2022, after relapsing into mania and psychosis, Ms. Beard, after consulting with her counselor, checked into St. Mary's psychiatric hospital, where she stayed for seven days. *Tr. 23, 445-465, 514-535*. Admitting psychiatric staff noted that Ms. Beard was anxious, manic, and disheveled, with racing thoughts and pressured speech. *Tr. 450*. Ms. Beard said she wanted to hurt people.[5] *Tr. 450-453*.

With therapy and medication, Ms. Beard stabilized during her hospital stay, and she was released. *Tr. 23, 470-504*. But her relative stability did not last. In the first part of 2023, psychiatric treatment records revealed more of the same manic symptoms that had plagued Ms. Beard for years. *Tr. 514-535*. Even post-hospitalization, Ms. Beard had problems with everyday functioning.

Bipolar disorder was arguably Ms. Beard's most problematic diagnosis. But the ALJ ignored it at step two. He then fell back into a similar refrain; throughout his opinion, he minimized the effect mental illness had on Ms. Beard's ability to function. He said she could perform multiple daily activities suggesting that she would be able to work. *Tr. 20-24*. Although he wrote that Ms. Beard could care for her children, do yoga and meditation, play games and puzzles, and do simple chores,

---

[5] Ms. Beard reported she had trouble getting along with others, which is certainly supported by the record. *Tr. 216*. More than once, she expressed homicidal ideations. The ALJ, however, did not assign any restrictions on interpersonal contact in the RFC, counter to what the stage-agency reviewing psychiatric expert opined (Christal Janssen, Ph.D., said that interpersonal contact should be only incidental to the work performed). *Tr. 21, 68*.

the record indicates otherwise. When Ms. Beard was feeling her best, she could perform these activities. But more often, she was not able to do things for herself. *Tr. 43-48, 211-215.* Ms. Beard's mother helped with a lot of things around the house, including childcare. Ms. Beard reported her mother, at times, acted as a "total caregiver." *Id.* Ms. Beard does not drive; rather her child drives her around. *Id.* Ms. Beard stated that due to severe bipolar disorder symptoms, she cannot be left alone with her children. *Id.* Her partner "helps me through everything." *Tr. 46.* Ms. Beard cannot shop alone due to mania, paranoia, and her fear that she will hurt someone. *Tr. 44.* Ms. Beard has never been able to work, due to her mental health impairments. *Tr. 42-49.*

The ALJ did not fairly consider or discuss Ms. Beard's bipolar disorder. That compromised the rest of the analysis about Ms. Beard's ability to function in a workplace, including the pivotal RFC determination. *See Cody v. SSA*, No. 3:17-CV-00316-BD, 2018 WL 3474076 *6-7 (E.D. Ark. July 19, 2018) (by ruling out back pain as a severe impairment at step two, even though the record showed it was severe, the ALJ short-circuited his RFC analysis; therefore, the court reversed). The ALJ's failure at step two taints the entire analysis and frustrates meaningful judicial review. Reversal for further review is the appropriate remedy.[6]

---

[6] In cases where "the record overwhelmingly supports a finding of disability," the appropriate remedy may be reversal and remand for an immediate award of benefits. *Pate-Fires v. Astrue*, 564 F.3d 935, 947 (8th Cir. 2009). However, in this case, the ALJ's truncated analysis

## IV. Conclusion

For the reasons stated above, the ALJ's decision is not supported by substantial evidence. The ALJ erred at step two.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be REVERSED and the case be REMANDED for further review.

Dated 10 March 2025.

_____
UNITED STATES MAGISTRATE JUDGE

---

leaves a record that is completely silent on the pivotal question of how Ms. Beard's bipolar disorder would affect her ability to work.